IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT MONTERROSA,                    )
                                      )      Civil No. 05-1233-MO
            Petitioner,               )
                                      )
      v.                              )
                                      )
BRIAN BELLEQUE,                       )
                                      )      OPINION AND ORDER
            Respondent.               )

      Kendra M. Matthews
      Ransom Blackmon, LLP
      1001 SW Fifth Avenue, Suite 1400
      Portland, Oregon 97201-1144

            Attorney for Petitioner

      Hardy Myers
      Attorney General
      Jonathan W. Diehl
      Assistant Attorney General
      Department of Justice
      1162 Court Street NE
      Salem, Oregon 97310

            Attorneys for Respondent

///

      1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying Murder conviction and resulting sentence. For the reasons which follow, the Amended Petition for Writ of Habeas Corpus (#28) is denied.

## BACKGROUND

On February 6, 1993, petitioner and Clifford Melbourne beat and stabbed Robert Britt to death, and on February 18, 1993, petitioner was charged with one count of Murder. Respondent's Exhibit 102. Kenneth Walker was initially appointed to represent petitioner, but on April 6, 1993, petitioner advised the court that he was not satisfied with Walker and requested new counsel. The court advised petitioner that Walker was "a very qualified lawyer," and also indicated that it was "not going to appoint another lawyer at public expense, and you just go through a series of lawyers if you don't like them, you'll fire them." Transcript (4/6/93), p. 5. The court ultimately allowed petitioner to substitute counsel, "not because I think you deserve one but because I think Mr. Walker doesn't deserve you as a client." *Id* at 12.

Angel Lopez and Gwen Butkovsky were next appointed to jointly represent petitioner. These attorneys represented petitioner during his bail hearing, a hearing on a motion to suppress, and a

2 - OPINION AND ORDER

change of plea hearing during which petitioner pled guilty to Murder.

On December 2, 1993, petitioner came before the court because he was dissatisfied with his new attorneys' performance. He had indicated to Lopez that he intended to file a post-conviction action against him, thereby creating a conflict in Lopez's opinion. Transcript (12/2/1993), p. 3. Petitioner advised the court, "I would rather represent myself." *Id.* He also informed the court that he may wish to withdraw his guilty plea, and it appears that he may have made such a request as part of a state habeas corpus petition he attempted to file with the trial judge.

The trial court allowed Lopez and Butkovsky to withdraw, but required Lopez to provide petitioner with a list of attorneys available for appointment by the court. The judge advised petitioner, "I want you to review that and see if there is anybody on the list you think you can get along with. If you can, I will ask them to represent you because the habeas corpus isn't properly filed." *Id* at 10.

Petitioner indicated that this would be acceptable, and the court informed him that "[t]here are lawyers that know how to do that, and you're going to need legal help to do that." *Id.* He further stated that "your lawyer is going to have to file a motion to withdraw that plea, and that would probably be the next step" and that it "is going to take representation to do that." *Id.*

3 - OPINION AND ORDER

The prosecutor wished to put on the record that petitioner had already fired one attorney without good cause, and did not believe there was any basis for petitioner's dissatisfaction with his subsequent attorneys. *Id* at 11. The trial judge responded as follows:

> Mr. Peters, I know. I don't disagree with you. I'm just saying that it is going to be a lot easier to do it this way than do it the hard way. So we're going to do it the easy way.
>
> Anyway, we'll give [petitioner] a list [of possible attorneys]. If [petitioner] can find somebody [petitioner] can get along with, I'll appoint them to raise those issues. Then we'll get on with the case."

*Id* at 11.

After petitioner had an opportunity to review the list of potential attorneys, on December 13, 1993, the trial court appointed Michael Curtis as new counsel. Transcript (12/13/1993), pp. 3-4. However, in late February 1994, petitioner filed a motion asking the court for leave to proceed *pro se*. The court held a hearing on the motion on March 2, 1994. At the hearing, Curtis commented that "it appears to me that it is perfectly lawful for him to represent himself. So I ask the court to relieve me of all responsibility in this case and allow Mr. Monterrosa to proceed." Transcript (3/2/1994), p. 3. The following colloquy ensued:

Court:        Mr. Monterrosa, I have a handwritten motion to
             proceed pro se. I don't know whether you signed it
             at -- you signed it at the end. Is that your
             desire, to proceed without an attorney?

Petitioner:   Yes, your honor.

4 - OPINION AND ORDER

Court:          Why is that so?  Mr. Curtis was your lawyer at --

Petitioner:     It has nothing to do with Mr. Curtis' abilities.
                But when I relieved -- I asked to have Angel Lopez
                and Gwenn Butkovsky relieved on December 2, I
                thought I would be able -- this is my belief-- I
                felt because of what I felt was negligence on their
                part, that I wouldn't be effectively represented by
                an attorney any further.

                At that time, I stated to the court that I would
                like to proceed pro se, and I believe you kind of -
                - that issue was never settled because of the
                habeas corpus form that wasn't adequately -- you
                know.

                But since then, I wrote it and accepted it to the
                Supreme Court, and it is pending in the Supreme
                Court now and file for the matter.  What I'm going
                up against is the withdrawal of my guilty plea.

                I could present the facts and research the law, not
                better than Mr. Curtis, but stating more precisely
                what -- exactly how I feel, that that guilty plea
                was involuntarily and illegally made.

Court:          May I make this suggestion to you.  Would you
                accept him in an advisory capacity?  You can
                represent yourself. <u>Faretta vs. California</u> clearly
                says you can do that.  You have an absolute right
                to do that.

                But why don't we set this for a couple of weeks and
                allow you whatever time you need to prepare
                whatever you want to, but use Mr. Curtis as an
                advisor to help you perhaps get in the proper
                forms.

Petitioner:     If Mr. Curtis doesn't have any objections to that,
                I wouldn't have no problem with that whatsoever.

*Id* at 4-5.  Curtis agreed to assist petitioner in an advisory role. *Id* at 6.

Shortly thereafter, petitioner again appeared before the court, this time with Curtis acting as his legal advisor. Petitioner asked the trial judge to relieve Mr. Curtis from his advisory role altogether, explaining that "[e]ven though I'm not familiar with the procedures, you know, I don't think it is very difficult for me if I -- if given enough time to prepare myself adequately." Transcript, (3/23/94), p. 8.  Petitioner did not feel that counsel was "going to be beneficial to me in this case at all." *Id* at 9.   The trial judge carefully explained to petitioner that Curtis was necessary due to the complex nature of the legal proceedings:

Court:        One reason I was concerned, Mr. Monterrosa, is not that he continue to act as a legal -- in a legal capacity as much as to make sure you don't miss any legal hoops that you have to jump through.  In other words, that you don't make procedural mistakes.

                      * * * * *

For instance -- let me give you an example.

                      * * * * *

I can't tell in your case, it is hard for me to foresee what might happen.  But for instance, on a notice of appeal, if you lose here, for instance, you have a case -- you have 30 days on which to appeal from entry of final judgment.  And if you wait 31 days, you're out because it is jurisdictional.

6 - OPINION AND ORDER

Even if the Court of Appeals wanted to look at it,
they won't because it is jurisdictional. Those are
the kind of procedural hang-ups that people get
stuck on.

That's primarily why I want Mr. Curtis to stay as
an advisor to make sure you don't make any
procedural mistakes. You may lose everything but
you ought to do it on the merits, not on procedural
technicalities.

Okay? That's my concern. Not that he tell you how
to run your case. You're obviously, I think,
mentally able to do that yourself. I just don't
want you to make any procedural mistakes.

Petitioner:    You mean in other words, supposedly, I win my
motion [to withdraw guilty plea]. I go to him,
what do I do next, what's my next procedure from
here?

Court:         Yeah, yeah. That's what I'm saying. There are
certain things you have to do. Again, I can't
anticipate what it might be in the future.

                            * * * * *

But if you have to serve copies on the other side,
if you have to subpoena things, you've got to do
all those things by the numbers.

And I don't think you have necessarily sufficient
experience in that, but Mr. Curtis does. That's
why I want to keep him there if possible. Not to
run your show for you because you have an absolute
right to represent yourself. Just that you don't
make any procedural mistakes. That's all.

                            * * * * *

That's what I perceive is his job, is to make sure
you don't make any mistakes, procedurally. Okay?
That you don't miss deadlines that are going to
jeopardize your rights down the road. That's all.
That's the only reason.

Because on appeal, the courts can say -- deny
appeals simply because of failure to conform with

7 - OPINION AND ORDER

                              the rules.    I mean we have a lot of stuff like
                              that.

Petitioner:        Yeah.

Court:             For instance, motions to suppress have to be filed
                   according to statute within five days or a
                   reasonable period or something like that.

                   If you don't do it, the Court of Appeals says you
                   can't be heard to complain about it because you
                   didn't file it.  That's the kind of thing I want to
                   protect you from making, mistakes that are made
                   that don't go to the merits of the case but go to
                   some procedural aspect of it.  That's all.  So try
                   and get along for that limited purpose only.

Petitioner:        I didn't -- I didn't -- I didn't think it was a
                   point of not getting along.  It was just I don't
                   know what he's supposed to do.

Court:             That's all he's supposed to do, to make sure you
                   don't make any procedural mistakes.

*Id* at 9-14.    Importantly, this colloquy occurred prior to the

hearing on petitioner's motion to withdraw his plea.

      On May 17, 1994, petitioner, with Curtis at his side, argued

his motion to withdraw his guilty plea.    The court ultimately

denied the motion to withdraw the guilty plea as follows:

            I'm making a finding beyond a reasonable doubt that
      you set out some time ago before you entered this plea to
      manipulate the system, create a plan for your advantage,
      a plan you could get the best deal you could possibly
      think of and if things didn't go well, you had an out
      that might be in a position where the state would be
      delayed so long that they would not have been able to try
      this case.

            And I would state right now that you're not the
      first person who's tried that around here.  It's clear.
      You say it in your own words.  Page 4 of 11.  "They
      offered me 12 years and I took it.  But it was a plan on

      8 - OPINION AND ORDER

my part.  Now I'm taking my plea back and I'm going to
trial myself.  I'll be the lawyer."

    Grandiose, maybe, maybe.  But in your own words --
and I know this is your letter.  Nobody but you could
have written this.  I've read the whole thing.  It's got
your name and I just compared the signature.  On the face
of it, it's yours.

Transcript (9/28/94), pp. 79-80.

The  discussion  next  shifted  to  the  sentencing  phase  of
petitioner's case and, specifically, the plea agreement between the
parties.  The plea agreement provided, in part, as follows:

    4)    contingent  upon  providing  truthful  testimony  and
          other  cooperation  in  proceedings  against  Clifford
          Melbourne,  the  State  will  recommend  a  downward
          durational  departure  sentence  of  145  months  custody
          of  the  Oregon  Corrections  Division,  based  on  his
          cooperation  with  the  State  in  this  investigation;

    5)    should  the  defendant  refuse  to  provide  information
          relative  to  the  investigation,  or  should  the
          defendant  be  shown  to  have  been  untruthful  in
          describing  the  incident  at  issue,  the  court  will  be
          free  to  sentence  the  defendant  to  the  full  extent
          allowed  by  the  law.

Respondent's Exhibit 132.

Petitioner, however, refused to testify against Melbourne.  He
"stated under oath that he was refusing to make any statement [at
Melbourne's bail hearing].  He further said that he would continue
to  refuse  to  make  a  statement,  if  called  as  a  witness  against
Melbourne at any point in the future."  Respondent's Exhibit 131,
p. 2.  This was a critical breach of the plea agreement because
"[t]he whole point of the plea negotiation was to secure his
testimony against Melbourne."  *Id.*

    9 - OPINION AND ORDER

When the court asked the prosecutor whether the plea agreement was still operative for sentencing, the prosecutor responded, "For the record, the deal's off.  So it's clear.  We're ready to proceed to sentencing."  Transcript (9/28/94), p. 81.

Shortly before his sentencing hearing was due to commence, petitioner wrote the trial judge and called his chambers requesting the appointment of counsel.  Sentencing Transcript, p. 3.  The court granted the request and resurrected Curtis as petitioner's counsel of record for the sentencing proceeding.  *Id*.  Sentencing, however, had to be postponed when petitioner became uncontrollable in the courtroom, prompting the judge to impose six different contempt sentences of 180 days.[1]  *Id* at 4-5.

Sentencing resumed on December 20, 1994.  The prosecutor presented additional evidence of petitioner's breach of the plea agreement.  *Id* at 14-21.  The court ruled that the State was no longer bound by the terms of the plea agreement due to petitioner's breach, and sentenced petitioner to an upward departure sentence of 448 months in prison with a lifetime of post-prison supervision.  *Id* at 26, 34-35.  It ran this sentence consecutively to the 180-day contempt sanction it had previously imposed.

Petitioner took a direct appeal, but the Oregon Court of Appeals affirmed the trial court without opinion, and the Oregon

---

[1]  When the sentencing hearing resumed, the judge ultimately determined that "the six separate outbursts are to be considered one contempt of court. . . ."  Sentencing Transcript, pp. 34-35.

Supreme Court denied review.  *State v. Monterrosa*, 150 Or.App. 367m

944 P.2d 1004 (1997), *rev. denied*, 327 Or. 305, 966 P.2d 219

(1998).

Petitioner next filed for post-conviction relief ("PCR"), but

the  PCR  trial  court  denied  relief  on  all  of  his  claims.

Respondent's Exhibit 136.  The Oregon Court of Appeals affirmed the

PCR trial court's decision without opinion, and the Oregon Supreme

Court denied review.  Respondent's Exhibits 141-142.

On April 9, 2007, petitioner filed his Amended Petition for

Writ of Habeas Corpus in which he raises two grounds for relief:

> (1)  The  trial  court  permitted  him  to  proceed  *pro se*
>      without  a  proper  colloquy,  resulting  in  an
>      involuntary waiver of his Sixth Amendment right to
>      counsel  during  a  critical  stage  in  the  criminal
>      proceedings; and

> (2)  Petitioner's upward departure sentence was based on
>      facts  neither  charged  in  the  indictment  nor  proven
>      to a jury beyond a reasonable doubt in violation of
>      *Blakely  v.  Washington*,  542  U.S.  296  (2004)  and
>      *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Respondent  asks  the  court  to  deny  relief  on  the  Amended

Petition because the state court decisions resolving these claims

are  neither  contrary  to,  nor  unreasonable  applications  of,  clearly

established  federal  law  as  determined  by  the  U.S.  Supreme  Court.

## DISCUSSION

**I.   Standard of Review**

An  application  for  a  writ  of  habeas  corpus  shall  not  be

granted unless adjudication of the claim in state court resulted in

11 - OPINION AND ORDER

a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

///

12 - OPINION AND ORDER

## II.  Analysis

### A.  Waiver of Right to Counsel

Petitioner asserts that the trial court permitted him to proceed *pro se* without a proper colloquy, resulting in an involuntary waiver of his Sixth Amendment right to counsel during a critical stage in the criminal proceedings.  The PCR trial court denied relief on this claim as follows:

> Petitioner fired his first attorney.  Petitioner indicated that he wished to proceed pro se, and informed the court that he could present the facts better than counsel.  The court did convince petitioner's third counsel to stay on petitioner's case as a legal advisor. This counsel was reappointed on petitioner's behalf at the time of sentencing.  The court was lenient and tolerant with petitioner and did not err in allowing the petitioner to proceed pro se as petitioner demanded. Petitioner was well aware of the risks, and was adamant that he could do a better job than counsel.

Respondent's Exhibit 136, p.  These factual findings, including the finding that petitioner "was well aware of the risks" of proceeding *pro se*, are presumed correct absent clear and convincing evidence to the contrary.  28 U.S.C. 2254(e)(1).

The constitutional right to assistance of counsel is only implicated during "critical stages of the prosecution." *Kirby v. Illinois*, 406 U.S. 682, 690 (1972).  The Supreme Court has held that the critical stages of a criminal prosecution include post-indictment police lineups, arraignments, guilty pleas, and sentencings.  *United States v. Wade*, 388 U.S. 218 (1967) (post-indictment lineup); *Hamilton v. Alabama*, 368 U.S. 52, 53 (1961)

13 - OPINION AND ORDER

(arraignment); *White v. Maryland*, 373 U.S. 59, 60 (1963) (*per curiam*) (arraignment); *Arsinger v. Hamlin*, 407 U.S. 25, 34 (1972) (guilty plea); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (sentencing).  It has never specifically held that a request to withdraw a guilty plea is a critical stage in a criminal prosecution, and petitioner is able to cite only First and Second Circuit cases to support this proposition.  *See United States v. Segarra-Rivera*, 473 F.3d 381 (1st Cir. 2007); *United States v. Davis*, 239 F.4d. 283 (2nd Cir. 2001); *United States v. Sanchez-Barreto*, 93 F.3d 17 (1st Cir. 1996).  None of the cases cited by petitioner are 28 U.S.C. § 2254 habeas corpus actions, consequently they do not share the standard of review applicable to this case.  *See* 28 U.S.C. § 2254 (d) (requiring federal courts to rely on clearly established federal law as determined by the U.S. Supreme Court).

Assuming that a hearing on a motion to withdraw a guilty plea is a critical stage of a criminal prosecution for § 2254 purposes, a criminal defendant should not be allowed to proceed *pro se* unless he knowingly, intelligently, and unequivocally relinquishes the benefit of counsel.  *Faretta v. California*, 422 U.S. 806, 835 (1975). The accused should be made aware of the dangers and disadvantages of proceeding without counsel so he can make an informed decision.  *Id.*  There is, however, no "formula or script to be read to a defendant who states that he elects to proceed

without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).  The extent of the colloquy is dependent on a number of factors, including the stage of the criminal proceeding.  *Id.*

Petitioner takes issue with the trial court's colloquy at the time it allowed him to proceed *pro se*, a colloquy which the State characterizes as "admittedly scant."  Response (#41), p. 12.  The trial court did not specifically warn petitioner of the dangers of self-representation at the time it allowed petitioner to proceed *pro se*.  However, to focus solely on this particular colloquy is misleading because it ignores the surrounding context.

Although not required to do so, this court has conducted an independent review of the record in petitioner's case.  It reveals that petitioner was provided with four attorneys in three separate appointments (not including the re-appointment of Curtis).  When petitioner first asked to proceed *pro se*, the trial judge went so far as to provide petitioner with a list of attorneys to choose from in order to avoid placing petitioner in the position of representing himself.  Despite the trial court's substantial efforts to protect petitioner from self-representation, petitioner continued to insist that the court allow him to proceed *pro se*, even though he was not dissatisfied with Curtis' abilities.

The trial judge finally relented and allowed petitioner to proceed *pro se*, noting that petitioner had every right to do so.  The trial judge did, however, again attempt to protect petitioner

when he prevailed upon him to maintain Curtis as a legal advisor, putting Curtis in the unenviable position of acting as petitioner's legal assistant.  When petitioner later came to the court prior to the hearing on his motion to withdraw his plea and asked the court to discharge Curtis entirely, the trial judge convinced him to keep Curtis at his side as an advisor because petitioner did not have sufficient experience to represent himself without Curtis' assistance.

Despite an insufficient colloquy at the time petitioner waived his right to counsel, the PCR trial court determined from the record that petitioner was well aware of the risks of self-representation. "Because the Supreme Court has not spoken to the consequences of the trial court's failure to give proper *Faretta* warnings, a state court would be entitled to conclude that a defective waiver colloquy does not automatically result in a defective waiver--that a defendant's waiver was nonetheless knowing and voluntary, perhaps because defendant was well versed in the criminal justice process." *Cordova v. Baca*, 346 F.3d 924, 926-27 (9th Cir. 2003).  Here, there is significant evidence to support the PCR trial court's factual finding.  Specifically, the trial judge:  (1) made every effort to provide petitioner with counsel and, prior to petitioner's *pro se* appearance on his motion to withdraw his guilty plea, repeatedly told him that he needed the assistance of counsel in order to function effectively; (2) went to

great lengths to ensure that petitioner continued with Curtis in an advisory capacity; (3) made a specific finding that petitioner was attempting to manipulate the proceedings by systematically firing his attorneys in an effort to delay the case to the point where the State would be unable to prosecute him; and (4) allowed petitioner to proceed *pro se* at a relatively late stage of the proceedings after he had experience with four different attorneys.

Petitioner has not presented the court with clear and convincing evidence that he was not aware of the risks of self-representation when he waived his right to counsel.  To the contrary, a thorough review of the record supports such a finding.  Accordingly, the PCR trial court did not unreasonably apply U.S. Supreme Court precedent when it denied relief on this claim.

**II.  Unlawful Departure Sentence**

Petitioner also takes issue with his 448-month sentence, which was the result of an upward departure.  He bases his claim on the Supreme Court decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Neither of these cases apply retroactively to convictions, such as petitioner's, which became final before these decisions were announced. *Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir. 2005); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 671 (9th Cir.), *cert. denied*, 537 U.S. 939 (2002).  Accordingly, this claim is without merit.

## <u>CONCLUSION</u>

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#28) is DENIED, and this case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this  8th  day of January 2008.


      /s/ Michael W. Mosman
      Michael W. Mosman
      United States District Judge

18 - OPINION AND ORDER